**TAULER SMITH, LLP**
Robert Tauler (SBN 241964)
Wendy Miele (SBN 165551)
626 Wilshire Boulevard, Suite 550
Los Angeles, CA 90017
Telephone: (310) 590-3927
rtauler@taulersmith.com
wmiele@tauelrsmith.com

Kevin J. Cole (SBN 321555)
kevin@kjclawgroup.com
**KJC Law Group, A.P.C.**
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Tel: (310) 861-7797

Attorneys for Plaintiff
*Dana Hughes*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA HUGHES, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>SERVICETITAN, INC., a California Corporation; and DOES 1 to 10, inclusive,<br><br>     Defendants. | CASE NO. 2:24-cv-01399<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT (CAL. PENAL CODE §§ 631, *et seq.*)**<br><br>(***JURY TRIAL DEMANDED***) |

-1-

Plaintiff Dana Hughes ("Plaintiff"), individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

## <u>THE PARTIES</u>

1.     Plaintiff Dana Hughes ("Plaintiff") is and at all relevant times mentioned was a citizen of Los Angeles County, California (within the Central District of California). Plaintiff is a "tester" of compliance with CIPA. Plaintiff's right to privacy is important to her and she believes that her online messages and data should not be illegally monitored, recorded, or used for invasive or unwanted advertising by anyone. When Plaintiff is at her home in Los Angeles County and someone illegally reads her conversations and tracks, uses and sells her own data she believes the wrongdoer should be held accountable for their past behavior and ordered to cease violating the rights of Plaintiff and the general public who visit the website in the future. *See, e.g.*, *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1101–02 (9th Cir. 2017) (concluding that the motivation of an ADA "tester" was irrelevant to the Article III standing analysis); *see also* Cal. Crim. Code § 637.2 (creating a private right of action to enforce CIPA authorizing suit by "any person who has been injured by a violation of [CIPA]" and expressly stating in the statute that actual damages are unnecessary to bring a claim). Plaintiff intends to return to Defendant's website in the future, including to check whether Defendant continues to violate CIPA.

2.     Defendant ServiceTitan, Inc. ("Defendant" or "ServiceTitan") is a California corporation with its principal place of business in Glendale, California. ServiceTitan provides business software for commercial contractors through its website https://www.servicetitan.com.

3.     Plaintiff does not know the true names or capacities of the persons or entities sued as DOES 1 to 10, inclusive, and therefore sues such Defendants by such fictitious names.  Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged in this Complaint.  Defendants shall together be referred to as "Defendants" or "ServiceTitan."

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class.  Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

5.     The Central District of California has specific personal jurisdiction over ServiceTitan.  Specific jurisdiction over a non-resident defendant exists where: (1) "[t]he non-resident defendant . . . purposefully direct[s] [it]s activities or consummate[s] some transaction with the forum or resident thereof; or perform[s] some act by which [it] purposefully avails [it]self of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;" (2) the claim is one that "arises out of or relates to" the defendant's activities in the forum state; and (3) the exercise of jurisdiction comports with "fair play and substantial justice, i.e. it must be reasonable."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The plaintiff need only establish the first two prongs, while it is the defendant's burden to "present a compelling case" that the exercise of jurisdiction would not be reasonable.  *Id.*

6.     ***Purposeful Availment.***  Under the first prong of the three-part test,

"purposeful availment" includes both purposeful availment and purposeful direction, which are two distinct concepts. *Id.* Where a case sounds in tort, as here, courts employ the purposeful direction test. Purposeful direction requires the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (citing *Schwarzenegger*, 374 F.3d at 802). On information and belief, ServiceTitan does a substantial amount of business in California, and—as relevant here—regularly engages in chats with individuals in California through the chat box feature on its website which, as explained below, constitutes an illegal form of surveillance. In other words, ServiceTitan employs an illegal surveillance scheme directed at and harming California residents, including Plaintiff.

7.     ***Claim Arising Out of Action in the Forum Prong.*** Under the second prong of the three-part specific jurisdiction test, personal jurisdiction exists where, as here, the claim "arises out of or relates to" the defendant's activities in the forum state. Courts in the Ninth Circuit use a "but for" test to determine whether the claim "arises out of" the nonresident's forum-related activities. In other words, the test is satisfied if the plaintiff would not have suffered loss "but for" defendant's activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, ServiceTitan's contact with the forum—employing an illegal surveillance scheme directed at California residents—is the basis of its violations of the California Invasion of Privacy Act ("CIPA"). But for ServiceTitan's contact with the forum, Plaintiff would not have suffered harm.

8.     ***Venue.*** Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 because ServiceTitan:

a)    is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District;

b)    does substantial business within this District;

c)    is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## GENERAL ALLEGATIONS

9.    Chat boxes are common on many commercial websites and serve many legitimate business purposes, including facilitating sales and reducing expenses for business.  However, in recent years, aided by significant advances in technology, chat boxes are increasingly operated by third party data companies as a means for corporate surveillance.

10.   Due largely to the fact that commercial chat boxes seem innocuous and inconspicuous, very few website users suspect that their chats are being used as a means to obtain significant amounts of information about them.  However, like all means of surveillance, the inconspicuous nature of chat boxes is exactly what makes them valuable tools to meet their objective.  In many instances, such as here, the website operating the chat boxes never disclose the nature of the chat box interaction: namely that chats are being routed to third party servers so that a third party may to record, store, and use communication for the purposes of collecting information about a specific internet user.

11.   CIPA prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication. The vast majority of website operators comply by disclosing to visitors that their communications are being recorded, and the purpose of such recording.

Defendant Service Titan

-5-

12.     ServiceTitan is the proprietor of https://www.ServiceTitan.com, an online platform for home and commercial contractors to keep all their service visits and construction projects.  Customers from across the country, including California residents, access and use ServiceTitan's website to explore and purchase products and services offered by ServiceTitan.

13.     CIPA prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication.  Compliance with CIPA is simple, and a vast majority of website operators comply by conspicuously warning visitors that their conversations are being recorded, or if third parties are eavesdropping on them.

14.     However, ServiceTitan ignores CIPA.  ServiceTitan's actions are not incidental to the act of facilitating e-commerce; rather, ServiceTitan's actions are contrary to industry norms and the legitimate expectations of consumers, including their reasonable expectation of privacy.

15.     In the context of ServiceTitan's website, an iFrame (or Inline Frame) is a code that embeds content from another website—in this case, Drift—within a web page.  However, this code intercepts the inquiries that consumers believe are being sent directly to ServiceTitan and diverts them to Drift.com:

16.     According to Drift's "WireTapping FAQs" available on its website, https://gethelp.drift.com/s/article/Wiretapping-FAQ, the "Drift Platform maintains a transcript of the chat which is then stored in the Customer's Drift account and, as such, is recorded." Once Drift gains access to the user's information, it uses it for a

host of purposes, including development of its own products, using the chats for "machine learning and NLP to learn context, and continually get better at answering those questions."   As such, Drift uses chats for its own purposes.

17.   The Drift chat is used to "take in additional information from the visitor and build them into future conversations" and "can identify site visitors." Drift explains that "when the customer tells you additional identifying information via chat, like her email address, Drift's website visitor identification software uses that information to further personalize the conversation and every interaction thereafter."[1]

18.   After Drift takes information from the chat it will "then enrich this data using Clearbit [and] ZoomInfo."   Both Clearbit and Zoominfo are data brokers registered with the California Secretary of State. ServiceTitan fails to inform its website users that their communications are being monitored and stored by Drift, or that Drift is using the chats to "enrich" the information shared with data brokers.

19.   ServiceTitan should not be permitted to acquire such extensive personal information from unsuspecting individuals who visit their website merely to research or review their offerings.   On information and belief, ServiceTitan uses the data collected to obtain information about private households.   This blatant disregard for consumer privacy is unacceptable and warrants appropriate scrutiny and intervention.

20.   Within the past year, Plaintiff used the chat box feature on ServiceTitan's website.   But ServiceTitan did not inform Plaintiff, or any of the Class Members, that she was not actually communicating with ServiceTitan at all when chatting online at its website.   ServiceTitan does not disclose its relationship with Drift at all, or that ServiceTitan is aiding, abetting, and paying third parties like Drift, which is recording and commoditizing their communications using the

---

[1] https://www.drift.com/solutions/visitor-intelligence/

seemingly harmless chat box feature.  This sort of feature—because it is seemingly innocuous and appears to occur on ServiceTitan's website—would never give rise to the suspicion that it is really a means to collect data and subvert privacy rights.

21.    ServiceTitan did not obtain the Class Members' express or implied consent to wiretap or allow third parties to eavesdrop on visitor conversations, nor did the Class Members know at the time of the conversations that ServiceTitan was secretly wiretapping them and allowing third parties to eavesdrop on them.

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this action on behalf of herself and all persons similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All persons in the United States who, within the statute of limitations period, communicated with Defendant via the chat feature on Defendant's website using cellular or landline telephony, and whose communications were recorded and/or eavesdropped upon without prior consent.

23.    The above-described class of persons shall hereafter be referred to as the "Class."  Excluded from the Class are any and all past or present officers, directors, or employees of ServiceTitan, any judge who presides over this action, and any partner or employee of Class Counsel.  Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, among other things, changing circumstances and/or new facts obtained during discovery.

24.    In the alternative, Plaintiff seeks certification of the following class pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure:

> All persons in California who, within the statute of limitations period, communicated with Defendant via the chat feature on Defendant's website using cellular or landline telephony, and whose communications were recorded and/or eavesdropped upon without prior consent.

25. **Numerosity**.  The Class is so numerous that joinder of all members in one action is impracticable.  The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are thousands of members of the Class, if not more.

26. **Typicality**.  Plaintiff's claims are typical of those of other members of the Class.  As a person who visited Defendant's website and whose electronic communications were recorded, intercepted and eavesdropped upon, Plaintiff is asserting claims that are typical of the Class.

27. **Adequacy of Representation**.  Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.  Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and her counsel intend to prosecute this action vigorously.  Plaintiff has no antagonistic or adverse interests to those of the Class.

28. **Existence and Predominance of Common Questions of Law or Fact**.  Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a) Whether Defendant caused electronic communications from Class

Members with the website to be recorded, intercepted, and/or monitored;

b) Whether Defendant aided and abetted a third-party in eavesdropping on such communications;

c) Whether Plaintiff and the Class Members are entitled to statutory penalties; and

d) Whether Class Members are entitled to injunctive relief.

29. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

30. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

31. **Ascertainability**. Upon information and belief, ServiceTitan keeps

extensive computerized records of the communications it facilitates through its website.  ServiceTitan has one or more databases through which a significant majority of members of the Class may be identified and ascertained, through which notice of this action is capable of being disseminated in accordance with due process requirements.

32.    The California Class also satisfies each of the class action requirements set forth above.  The allegations set forth above with regards to the Class, therefore, apply equally to the California Class.

## CLAIMS FOR RELIEF

### First Cause of Action

### Violation of the California Invasion of Privacy Act

### Cal. Penal Code § 631(a)

### (By Plaintiff Against Defendants on Behalf of the Class)

33.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

34.    Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, or contrivance, or in any other manner . . .

i) intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system; or

ii) willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent

from, or received at any place within this state; or

iii) uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."

35.    Here, Defendant has violated the third prong.

36.    Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's electronic communications with Defendant's website.  "Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' Cal. Penal Code § 631(a)."  *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022).

37.    The software embedded on Defendant's website to record and eavesdrop upon the Class's communications qualifies as a "machine, instrument, or contrivance, or . . . other manner" used to engage in the prohibited conduct alleged herein.

38.    At all relevant times, Defendant aided, abetted, and even paid third parties to eavesdrop upon such conversations.

39.    Plaintiff and the Class Members did not expressly or impliedly consent to any of Defendant's actions.

40.    Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 631(a), entitling Plaintiff and the Class Members to injunctive relief and statutory damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dana Hughes prays for relief and judgment in favor of herself and the Classes as follows:

A.     For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.     For an order declaring that Defendant's conduct violates CIPA.

C.     For an order of judgment in favor of Plaintiff and the Class against Defendant on the cause of action asserted herein.

D.     For an order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper.

E.     For statutory damages pursuant to CIPA.

F.     For punitive damages.

G.     For prejudgment interest.

H.     For reasonable attorneys' fees and costs.

I.     For all other relief that would be just and proper as a matter of law or equity, as determined by the Court.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the Classes, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.


DATED:  February 21, 2024          Respectfully submitted,

                                   **TAULER SMITH LLP**

                                   By: */s/ Robert Tauler*

                                   Attorneys for Plaintiff
                                   *Dana Hughes*

-13-